IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| GREGORY T. DURHAM, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-24-02523 |
| | * | |
| AIRBNB, INC., *et al.*, | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Gregory T. Durham ("Plaintiff") filed a Complaint against Airbnb, Inc. ("Airbnb") and other defendants arising out of injuries he sustained in a fall while exiting a hot tub at a rental property. ECF 1. Although the other defendants have answered the Complaint, Airbnb has filed a Motion to Compel Arbitration, ECF 35. Plaintiff opposed the Motion, ECF 38, and Airbnb replied, ECF 39. During the briefing of the motion, the United States Court of Appeals for the Fourth Circuit issued its opinion in *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380 (4th Cir. 2024), a case with some relevance to the issues presented. This Court therefore invited the parties to submit supplemental briefing, ECF 40, and both parties did. ECF 41, 42. This Court has carefully reviewed all of the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, this Court will grant the Motion, will compel arbitration of Plaintiff's claims against Airbnb, and will stay this proceeding as to Airbnb only until the arbitrable issues have been adjudicated.

I.       FACTUAL BACKGROUND

Plaintiff is a New Jersey resident. ECF 1 ¶ 1. On or about September 23, 2023, Plaintiff's then-girlfriend, Jennifer Frantzen, responded to an Airbnb advertisement for the rental of a

property in Ocean City, Maryland ("the Property"). *Id.* ¶ 11. Airbnb requires all users to create an Airbnb account and agree to Airbnb's Terms of Service ("TOS") before using its site to host or rent properties. ECF 35-3 (O'Larey Decl.) at 2, 7; ECF 35-14 ("TOS") 1 and 17. The TOS provides that agreements for bookings are between hosts and guests only and Airbnb is not a party to the transaction or the agreement. Airbnb has no access to the properties and has no role in the ownership or management. Section ¶23.4 of the TOS provides:

> Agreement to Arbitrate. You and Airbnb agree that any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof, or any use of the Airbnb Platform, Host Services, or any Content (collectively, "Disputes") will be settled by binding individual arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute . . . the arbitration will decide that issue.

O'Larey Decl. ¶ 28.

On November 9, 2023, Frantzen entered into a contract, through Airbnb, with Defendant Nathan Johnson, as host, to rent the Property from November 10, 2023 to November 13, 2023, for nine guests. ECF 1 ¶ 12. Plaintiff's Complaint alleges that Plaintiff "was an intended beneficiary of the contract." *Id.* ¶ 9.

Plaintiff arrived on November 10, 2023, intending to stay at the Property for the weekend pursuant to Frantzen's Airbnb contract. *Id.* ¶ 14. The Property had a hot tub on its back deck, with no railing accompanying its fabricating stairs. *Id.* ¶ 15. The back deck was poorly lit and the only lights were on the opposite side of the hot tub. *Id.* ¶ 16-17. Once the sun set, the area of the hot tub became pitch black. *Id.* ¶ 19. Upon attempting to exit the hot tub in the dark, Plaintiff missed the last stair and suffered serious injuries requiring significant medical care. *Id.* ¶¶ 20–22.

The instant lawsuit ensued, in which Plaintiff asserts a claim for negligence and seeks recourse from Airbnb, the LLC owner of the rental property, Keller Williams Capital Properties, which appears to be Nathan Johnson's employer, and Nathan Johnson and his wife, Cindi Johnson.

## II.    LEGAL STANDARD

In the Federal Arbitration Act, Congress provided that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal courts employ state law to determine whether the contract containing the arbitration clause, and thus the arbitration clause itself, is enforceable. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("Arbitration agreements are as enforceable as other contracts, but not more so" (cleaned up)); *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024) ("Whether an agreement to arbitrate was formed is a question of ordinary state contract law principles." (cleaned up)).

Because the Airbnb Terms of Service contain a California choice-of-law provision, this Court will apply California contract law in assessing whether Plaintiff can be bound to Frantzen's agreement to arbitrate.[1] Under California law, "There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement. As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.'" *Cohen v. TNP 2008 Participating Notes*

---

[1] Airbnb argues that California contract law applies in this case. ECF 35-1 at 6. Plaintiff does not discuss choice of law in his motions briefing. This Court agrees that California law applies, but, as a practical matter, does not believe there is meaningful difference between California and Maryland law as to the relevant principles.

3

*Program LLC*, 31 Cal. App. 5th 840, 859 (2019) (citing *Benaroya v. Willis*, 23 Cal. App. 5th 462, 469 (2018); *accord Suh v. Superior Court*, 181 Cal .App. 4th 1504, 1513 (2010)).

Where a Court finds the parties bound to a valid written arbitration agreement and a dispute within the scope of the agreement, it must compel arbitration. *See AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The Federal Arbitration Act generally requires courts to stay their proceedings until any issue referable to arbitration has been adjudicated. *See* 9 U.S.C. § 3; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

### III.  ANALYSIS

The parties' dispute turns on whether Plaintiff, a non-signatory to the rental agreement in this case, should be bound by the arbitration agreement in Airbnb's TOS. This Court finds that, under California law, two theories allow Airbnb to bind Plaintiff to the arbitration agreement despite the fact that he did not sign the rental contract.[2]

The first is that Plaintiff is an intended third-party beneficiary of Frantzen's Airbnb contract, as he acknowledged in his Complaint. ECF 1 ¶ 9 ("Plaintiff was an intended beneficiary of the contract."). In California, "[e]xceptions in which an arbitration agreement may be enforced by or against nonsignatories include where a nonsignatory is a third-party beneficiary of the agreement." *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036 (2007). While Plaintiff only asserts a negligence claim, not a contract claim, he premises his assertion of liability against Airbnb on the contract Frantzen signed. In other words, Plaintiff alleges no facts specifying any conduct by

---

[2] Plaintiff urges this Court to rule in accordance with *Matthew-Ajayi v. Airbnb, Inc.*, Civ. No. ADC-23-3035, 2024 WL 176916 (D. Md. Apr. 24, 2024). This Court declines to do so on several grounds. First, *Matthew-Ajayi* applied Maryland contract law, not California's. Second, the plaintiff in *Matthew-Ajayi* had not expressly acknowledged that she was an intended beneficiary of the contract her sister signed. And third, the *Matthew-Ajayi* court did not have the benefit of the Fourth Circuit's ruling in *Naimoli v. Pro-Football, Inc.*

4

Airbnb other than its participation in the contracting process with Frantzen. As Plaintiff acknowledges his status as intended third-party beneficiary and availed himself of the benefit of the agreement by staying at the Premises, he cannot use the existence of the contract to further his negligence claim against Airbnb while avoiding the less desirable terms of the contract.

The second theory, which independently permits enforcement of the arbitration agreement against Plaintiff, is Frantzen's apparent authority to act on his behalf in entering the rental agreement. There is certainly no evidence that Plaintiff reviewed the rental agreement or became aware of its arbitration provision. In California, "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (2005).

The Fourth Circuit's recent decision in *Naimoli* is highly instructive. In that case, a friend and relative of the four Plaintiffs, Brandon Gordon, purchased nine tickets to a professional football game through a website called "TickPick." 120 F.4th at 383. Gordon presented the nine tickets to the gate agent using his iPhone, which allowed the party of nine to enter FedExField in Landover, Maryland. *Id.* The evidence did not demonstrate that the other eight members of the party ever saw the tickets, reviewed the terms, or even handled Gordon's phone when entering the stadium. The terms and conditions associated with the ticket provide in relevant part that, "by purchase, acceptance and or use of such license, Holder is deemed to have read the Terms and has agreed to be bound by them." *Id.* The terms further included an arbitration clause providing "any dispute, claim, or cause of action in any way related to the ticket or the event" shall be resolved by arbitration. *Id.*

5

A rail collapsed at the stadium after the game, injuring four members of Gordon's party. *Id.* The then-Washington Football Team filed a motion to compel arbitration, which the plaintiffs opposed on the grounds that they had not agreed to arbitrate. *Id.* Applying Maryland law, the Fourth Circuit determined that the Washington Football Team had reasonably relied on Gordon's apparent authority to act on behalf of the plaintiffs in purchasing the tickets under the terms of the limited license to attend the football game. *Id.* at 387–88. The plaintiffs used the tickets to enter the stadium, manifesting their acceptance to the contract terms. *Id.* The Fourth Circuit quoted a Fifth Circuit decision for the proposition that "Event attendees routinely purchase and present tickets on behalf of family and friends, and in doing so, accept the required terms and conditions." *Id.* at 388 (quoting *Jackson v. World Wrestling Ent., Inc.*, 95 F.4th 390, 393 (5th Cir. 2024)).

Of course, the instant case applies California contract law, not Maryland law. But the essential principles relating to apparent authority are the same. Airbnb relied on Frantzen's apparent authority to act on behalf of her rental party in renting a house in which they would all stay, using Airbnb's TOS. The nine-person rental party, including Plaintiff, arrived and stayed at the Premises, manifesting their acceptance to the contract terms. Like with a purchase of event tickets, it is routine for a single member of a larger party to enter a contract to rent a vacation home on behalf of a larger number of occupants/intended beneficiaries. It is not routine for each member of the rental party to have to review and sign the lease agreement or the terms of service in order to occupy or visit the rental home. In this case, Plaintiff's Complaint even acknowledges that he was an intended beneficiary of the rental agreement, because he was always intended to occupy the property rented by his girlfriend. *See* ECF 1 ¶ 12 (noting that the contract signed on November 9, 2023 was "for a total of nine guests, one of which was the Plaintiff."). Under those circumstances, by allowing not just Frantzen but the members of her traveling party to occupy the

Premises, Airbnb reasonably relied on Frantzen's apparent authority to bind the members of her party renting the home to the applicable contractual terms, including the arbitration agreement.[3] *See Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 45 (1st Cir. 1984) (binding principal to agent's agreement to a limitation of warranties, noting that "the law of principal and agent is clear that conferring authority to conduct a transaction gives authority to undertake acts incidental to the transaction.").

Thus, under two different theories binding a nonsignatory to an arbitration agreement under California law, Plaintiff is bound to the arbitration agreement in Airbnb's TOS in connection with Frantzen's rental of the premises. Airbnb's motion to compel arbitration must therefore be granted.

### IV.   CONCLUSION

For the reasons set forth above, Airbnb's Motion to Compel Arbitration, ECF 35, will be GRANTED. This Court will stay these judicial proceedings against Airbnb only pending the arbitration, allowing this case to proceed against the remaining defendants. A separate Order follows.

Dated:  March 3, 2025                                   /s/
                                                       Stephanie A. Gallagher
                                                       United States District Judg

---

[33] To hold otherwise, in the circumstances of rental properties, would mean that other occupants of the home would not be bound by any of the rental terms unless they each personally signed the rental agreement — they could bring pets, smoke in the home at will, throw noisy parties until all hours of the night, and generally engage in conduct widely prohibited by standard vacation leases. No reasonable landlord would countenance that arrangement, evidencing the broad understanding that the lease binds all anticipated occupants of the home, not simply the one signing the agreement on behalf of the group.